Steven I. Adler
Mohamed H. Nabulsi
Harrison McAvoy
Todd M. Nosher
**MANDELBAUM BARRETT PC**
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
sadler@mblawfirm.com
mnabulsi@mblawfirm.com
hmcavoy@mblawfirm.com
tnosher@mblawfirm.com
P: 973-736-4600
F: 973-325-7467

*Attorneys for Defendants Norman M. Rowe, M.D., Norman M. Rowe, M.D. PLLC, Norman M Rowe MD of New Jersey LLC, Rowe Plastic Surgery of New Jersey LLC, and East Coast Plastic Surgery PLLC PA*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EMBLEMHEALTH, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>NORMAN M. ROWE, M.D., NORMAN M. ROWE, M.D. PLLC, NORMAN M. ROWE MD OF NEW JERSEY LLC, ROWE PLASTIC SURGERY OF NEW JESREY LLC, and EAST COAST PLASTIC SURGERY PLLC PA,<br><br>Defendants. | Case No. 26-cv-3311<br><br>***DOCUMENT ELECTRONICALLY FILED VIA CM/ECF***<br><br>Jury Trial Demanded |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**THE COMPLAINT AND STAY DISCOVERY PENDING ADJUDICATION**

# **Table of Contents**

Table of Authorities ........ ii

I. LEGAL ARGUMENT ........ 3

A. The Disputed Awards are Binding and not Reviewable via Declaratory Judgment. ........ 3

B. The Court Lacks Subject Matter Jurisdiction. ........ 3

C. Plaintiff's Vacatur Claims Fail. ........ 4

D. The Claims Are Barred by *Noerr-Pennington*. ........ 8

E. Each Cause of Action Fails to State a Claim. ........ 9

F. The Claims against Dr. Rowe Individually Fail ........ 10

G. A Stay of Discovery is Warranted. ........ 10

II. CONCLUSION ........ 11

## Table of Authorities

### Cases

*Aetna Health Inc. et al. v. Radiology Partners, Inc. et al.*,
No. 3:24-cv-01343 (M.D. Fla. Apr. 20, 2026) ........ 1, 11

*Aetna Health Inc. v. Srinivasan*,
No. A-2035-14T2, 2016 WL 3525298 (App. Div. June 29, 2016) ........ 10

*Anthem Health Plans of Va., Inc. v. AGS Health, Inc.*,
No. 7:25-cv-00804 (W.D. Va. May 29, 2026) ........ 10

*Badgerow v. Walters*,
596 U.S. 1 (2022) ........ 4

*Blue Cross Blue Shield of Texas v. HaloMD, LLC, et al.*,
No. 8:25-cv-01467 (C.D. Cal. Apr. 9, 2026) ........ 1

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ........ 2

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
168 F.3d 119 (3d Cir. 1999) ........ 8

*Fastware, LLC v. Gold Type Bus. Machines*,
No. 09-cv-1530, 2012 WL 28782 (D.N.J. Jan. 5, 2012) ........ 5

*Guardian Flight, L.L.C. v. Med. Evaluators of Texas ASO, L.L.C.*,
140 F.4th 613 (5th Cir. 2025) ........ 4, 8

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*,
806 F.3d 162 (3d Cir. 2015) ........ 8

*Int'l Bhd. of Teamsters, Local 701 v. CBF Trucking, Inc.*,
No. 09-cv-5525, 2010 WL 2400400 (D.N.J. June 10, 2010) ........ 6

*Modern Anthem Blue Cross et al. v. HaloMD LLC*,
No. 5:25-cv-132, 2026 WL 1557492 (E.D. Tex. May 22, 2026) ........ 1

*Modern Orthopaedics of NJ v. Premera Blue Cross*,
2025 WL 3063648 (D.N.J. Nov. 3, 2025) .......... 4

*Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co. Ltd.*,
868 F.2d 52 (3d Cir. 1989) .......... 5

*Neuromon Pros., LLC v. Horizon Blue Cross Blue Shield*,
No. 25-cv-13216, 2025 WL 3653894 (D.N.J. Dec. 17, 2025) .......... 5, 6

*Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Horizon BCBS of N.J.*,
No. 21-cv-10991, 2022 WL 4354654 (D.N.J. Sept. 20, 2022) .......... 9

*Service Employees Int'l Union Local 36 v. City Cleaning Co.*,
982 F.2d 89 (3d Cir. 1992) .......... 5

*Suarez v. E. Int'l Coll.*,
428 N.J. Super. 10 (App. Div. 2012) .......... 6

*Weske v. Samsung Elecs. Am. Inc.*,
934 F. Supp. 2d 698 (D.N.J. 2013) .......... 9

**Rules**

Rule 9(b) .......... 9, 10

Rule 12(b)(6) .......... 2, 10

Rule 26(f) .......... 11

**Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 1–16 .......... *passim*

No Suprises Act, 42 U.S.C. § 300gg–111 *et seq.* .......... *passim*

28 U.S.C. § 1927 .......... 7

Plaintiff's Opposition Brief ("**Opposition**" or "**Opp.**") does nothing to change the fact that the asserted claims constitute an unlawful challenge to 21 binding IDR arbitration awards ("**Disputed Awards**") issued by qualified neutral parties (the "**IDREs**") in accordance with the federal No Suprises Act ("**NSA**"). Taking issue with only the arbitrations it lost, Plaintiff attempts to overturn those Disputed Awards because it believes they are "irrational" and procured by a congressionally compelled statutory procedure it views as "astonishingly opaque." Opp. at ¶ 13. If that were not enough, Plaintiff's claims, all sounding in fraud, are also insufficiently pleaded under controlling authority and cannot be asserted under the operative law or the facts of this case.

The Opposition concedes that Plaintiff's case is a collateral attack on the IDR system. The first sentence makes this clear: "[a] law meant to end surprise medical billing accidentally created a multibillion-dollar industry that is making doctors richer." Opp. at 1. Subsequent lines confirm the same. *Id*.; *id.* at 11 ("[t]he submissions to the IDRE are made on an *ex parte* basis so that neither side sees the other side's submission . . . it is a process literally rife for fraud.").

But these positions are neither new nor compelling. They are shared by other large insurance companies who, like Emblem, have ignored the statutory prohibitions of judicial review codified by the NSA—and flooded the courts seeking relief that is foreclosed by law. Not surprisingly, courts have repeatedly rejected these attempts to rewrite legislation through litigation. *See, e.g.*, *Aetna Health Inc. et al. v. Radiology Partners, Inc. et al*., No. 3:24-cv-01343, slip op. at 9 (M.D. Fla. Apr. 20, 2026); *Modern Anthem Blue Cross et al. v. HaloMD LLC*, No. 8:25-cv-01467 (C.D. Cal. Apr. 9, 2026); *Blue Cross Blue Shield of Texas v. HaloMD, LLC, et al*., 2026 WL 1557492, at *6 (E.D. Tex. May 22, 2026).

Emblem's perceived harms are, therefore, non-actionable. They are also self-inflicted like the other large insurers in the actions above. Carriers influenced the NSA IDR system from the

outset and spent years lobbying to shape it. But unfortunately for the insurance industry, NSA awards have provided a critical check on companies, and insurers like Emblem are unhappy at their inability to use the NSA to push prices down further. Indeed, they can no longer run rough shod over the process because their unreasonably low offers run the risk of being rejected by neutral arbiters.[1]

That is exactly what has happened here. Among the six disputes discussed in the Complaint, Emblem admittedly began its IDR offers as low as $5,548.10 for a bilateral breast reduction—over six times (or 83%) less than what it routinely agreed to paid Dr. Rowe for the same procedure before the passage of the NSA. *See* Compl. ¶¶ 11, 139. The neutral IDRE, who, under the applicable "baseball" rules of arbitration, was tasked with evaluating each sides offer and selecting the more reasonably one, rejected Emblem's offer and selected Rowe's instead. *Id.* ¶ 141. Emblem's response is not to reconcile that discrepancy, but to seek throw out the arbitration results based on imagined and speculative claims of fraud in the process.

Recognizing the shortcomings of its position and the growing body of decisions rejecting similar claims, Plaintiff attempts to salvage its case through new theories, new allegations, and material omissions not found in the Complaint. It even relies on a physician declaration that has no bearing on the legal issues before the Court.[2] But Plaintiff is bound by the allegations it chose

---

[1] Indeed, there is nothing extraordinary about the awards Plaintiff complains of, as NSA IDR award across the country often favor providers. *See* Matthew Fielder and Loren Adler, *Outcomes Under the No Surprises Act Arbitration Process: A Brief Update*, BROOKINGS (July 31, 2024), https://www.brookings.edu/articles/outcomes-under-the-no-surprises-act-arbitration-process-a-brief-update.

[2] Plaintiff's submission of the June 18, 2026 Declaration of Dr. Arthur Perry should be disregarded. Because the Declaration is neither referenced in nor integral to the Complaint, it constitutes extrinsic evidence that cannot be considered on a Rule 12(b)(6) motion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Plaintiff cannot cure pleading deficiencies through a post hoc expert declaration.

to plead and by the limitations Congress imposed through the NSA. It cannot salvage its Complaint through motion briefing, nor can it manufacture a right to judicial review where none exists. Dismissal is the only possible outcome here.

## I. LEGAL ARGUMENT

### A. <u>The Disputed Awards are Binding and not Reviewable via Declaratory Judgment.</u>

Plaintiff first asks this Court to ignore the plain language of the NSA, suggesting that subsection 300gg-111(c)(5)(E)(i)(II) can be read out of the act altogether. But the conjunctive term "and" makes clear that both Subsections I and II of the "Effects of Determination" provision apply. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). Emblem cannot create a new path of judicial review by: (1) ignoring Subsection II; and (2) requesting a declaratory judgment that the Disputed Awards are not "binding" under Subsection I. Plaintiff's strained statutory interpretations do not alter this reality. Judicial review of IDR awards is exceedingly limited and is available only through vacatur—and even then, only on the narrow grounds expressly set forth in Section 10(a) of the Federal Arbitration Act ("**FAA**"). 9 U.S.C. § 10(a). Since a declaratory judgment claim is not vacatur, Plaintiff's argument in Section II of its Opposition is foreclosed by law. Defendants need not belabor this point any further.

### B. <u>The Court Lacks Subject Matter Jurisdiction.</u>

Plaintiff's arguments on subject matter jurisdiction fare no better. They also rest on the misapplication of law. The Opposition suggests that "Rowe is conflating cases holding that there is no private right of action to confirm an IDR award [] with the causes of action here." Opp. at 16. But Plaintiff ignores the fact that Congress's mere authorization of judicial review does not by itself establish federal jurisdiction. And, because the NSA's vacatur provision relies exclusively on the vacatur provisions in the FAA, which the Supreme has held do not establish federal

jurisdiction, *Badgerow v. Walters*, 596 U.S. 1, 8 (2022), the same result should apply to the NSA. Indeed, courts have made clear that "[t]he NSA does not provide a general private right of action to challenge award determination" and, "[i]nstead of providing a general private right of action to challenge awards, the NSA employs an administrative remedy." *Guardian Flight, L.L.C. v. Med. Evaluators of Texas ASO, L.L.C.*, 140 F.4th 613, 618, 620 (5th Cir. 2025) (emphasis added). This restriction is not merely limited to parties looking to confirm awards—it includes challenges to IDR "award determination" like Emblem's case here.

The unpublished *Modern Orthopaedics* decision cited in the Opposition does not support Plaintiff's position. While *Modern Orthopaedics* confirms that the NSA draws a distinction between confirmation and vacatur, it does not hold that the NSA independently confers federal jurisdiction for vacatur actions. *See Modern Orthopaedics of NJ v. Premera Blue Cross*, 2025 WL 3063648 (D.N.J. Nov. 3, 2025). Because Plaintiff's Complaint, on its face, offers no jurisdictional basis independent of the FAA, there is no subject matter jurisdiction.

### C. Plaintiff's Vacatur Claims Fail.

Plaintiff's vacatur count remains procedurally defective as described in Defendants' moving brief, and Plaintiff's request that the Court simply overlook this fault does not cure the defect.[3] The vacatur claims also fail as a substantive matter, as they come nowhere close to the high bar required to vacate a final arbitration award under the narrow purview of the NSA and, in turn, FAA Section 10.[4] This is true for all Plaintiff's purported reasons including: (1) the award is irrational; (2) contravenes public policy and (3) was secured by fraud.

---

[3] By ignoring procedure and failing to bring a motion to vacate, which would be subject to the operative scrutiny and burdens, Plaintiff attempts to circumvent those burdens through a pleading where sufficient, well-pleaded facts are accepted as true.

[4] Plaintiff argues that Defendants do not address all their vacatur claims. Not true. The Motion seeks a dismissal of the entirety of that claim.

The standard for vacating an arbitration award as irrational is extraordinarily demanding. There "must be absolutely nothing in the record to justify the arbitrator's decision." *Fastware, LLC v. Gold Type Bus. Machines*, 2012 WL 28782, at *1 (D.N.J. Jan. 5, 2012); *Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co. Ltd.*, 868 F.2d 52, 56 (3d Cir. 1989). The Complaint itself defeats Plaintiff's argument because it acknowledges the IDREs here (though not required under the NSA) supported their awards with reasoning to justify each disputed decision. *See, e.g.*, Compl. ¶¶ 181-82.

Regardless, an IDR determination rendered through the NSA's prescribed baseball-style arbitration process can hardly be characterized as irrational simply because one side disagrees with the outcome. *Neuromon Pros., LLC v. Horizon Blue Cross Blue Shield*, 2025 WL 3653894, at *5 (D.N.J. Dec. 17, 2025) ("[T]he NSA does not require an IDR entity to assign equal weight to each statutory factor, nor does it require a factor-by-factor explanation.").

Emblem's public policy argument fares no better. The Third Circuit has made clear that this exception applies only when "the arbitration decision and award create an <u>explicit conflict with an explicit public policy</u>" that is both "well defined and dominant and [can be] ascertained by reference to the laws and legal precedents and <u>not from general considerations of supposed public interests</u>." *Serv. Emps. Int'l Union Local 36 v. City Cleaning Co.*, 982 F.2d 89, 92 (3d Cir. 1992) (citation modified). Here, the allegations on public policy are minimal at best, are pure conjecture, and certainly do not meet the requisite threshold for vacatur. *See, e.g.*, Compl. ¶ 397 ("the awards have resulted in exactly the opposite of what the NSA intended to achieve").

Plaintiff's fraud claims suffer a similar fate. To establish corruption, fraud, or undue means sufficient to vacate an arbitration award, the moving party must establish the wrongful conduct by clear and convincing evidence, show that the conduct could not have been discoverable upon the

exercise of due diligence prior to the arbitration, and demonstrate that the conduct materially related to an issue in the arbitration. *Int'l Bhd. of Teamsters, Local 701 v. CBF Trucking, Inc.*, No. 09-cv-5525, 2010 WL 2400400, at *2 (D.N.J. June 10, 2010). The Complaint fails in this regard.

As an initial matter, Plaintiff's assertions of fraud are not demonstrable falsehoods or otherwise fraudulent. Emblem argues that Defendants' representation of Rowe as a small private practice was fraudulent. But Rowe is a small practice according to at least the AMA.[5] And regardless, such subjective statements cannot constitute fraud. *Suarez v. E. Int'l Coll.*, 428 N.J. Super. 10, 29 (App. Div. 2012) ("[N]either expressions of opinion, nor puffery, will satisfy this element of fraud."). Plaintiff also states that "Rowe also failed to disclose to the IDRE that they had entered into over one-hundred and fifty (150) contracts/SCAs [single case agreements] with Emblem." Compl. ¶ 153. But Emblem does not—and cannot—identify any statutory, regulatory, or procedural requirement obligating a party to disclose SCAs sua sponte in its IDR submission. Nor does it allege that the IDRE requested any such agreements and that Rowe failed to provide them. In fact, Emblem admits it disclosed prior SCAs in at least two IDR proceedings, yet the IDREs still selected Rowe's offers. Compl. ¶¶ 339-43, 366-68. Thus, Emblem's theory fails not only because no disclosure obligation existed, but because its own allegations show the SCAs had no effect on the outcome. *Id.* ¶ 368 (admitting that the IDRE stated it gave "no weight" to "the parties' history of entering into SCAs"); *Neuromon Pros., LLC v. Horizon Blue Cross Blue Shield*, 2025 WL 3653894, at *5 (D.N.J. Dec. 17, 2025).

Plaintiff also alleges that Defendants "misrepresented to the IDRE that Dr. Rowe 'has completed extensive research, numerous publications, and presentations,'" and that, "despite

---

[5] *See AMA Study Finds Majority of Physicians Still Work In Small Practices*, AMA: PRESS RELEASE (July 8, 2015), https://www.ama-assn.org/press-center/ama-press-releases/ama-study-finds-majority-physicians-still-work-small-practices.

extensive efforts, Emblem has found no publications/papers or presentations authored by Dr. Rowe." *Id.* ¶ 154. Yet publicly available materials tell a different story. A curriculum vitae for Dr. Rowe that has been available online for years lists scores of peer-reviewed publications, book chapters, and presentations, raising serious questions about the scope and rigor of Emblem's purported "extensive efforts."[6] The readily ascertainable nature of this public information also calls into question the factual investigation underlying the Complaint and underscores the care with which the Court should evaluate Plaintiff's unsupported allegations.[7]

Further, Plaintiff claims as fraud that "Defendants failed to provide [patient(s)] with the NSA Notice and Consent Form contemplated by Section 42 U.S.C. § 300gg-132(d)." *See, e.g.*, Compl. ¶ 126. This is the height of misdirection. There is absolutely no requirement to provide, or obtain a patient signature on, such form. Indeed, the Centers for Medicare and Medicaid Services' ("**CMS**") sample Notice and Consent form is for ***patients to waive their statutory rights*** under the NSA.[8] There is nothing untoward with physicians not asking patients to waive their rights under the NSA. That this reality may frustrate carriers is of no legal consequence. Perhaps worst of all, Emblem even suggests that the IDR *offers themselves* were fraudulent. Compl. ¶ 271 (referencing a "fraudulently concocted and fictitious billed charge"). Apparently, this accusation stems from the fact that Defendants submitted offers higher than the artificially depressed amounts they had been compelled to accept before the advent of the NSA's IDR process. The IDREs' repeated

---

6 Though irrelevant to Plaintiff's defective claims, Dr. Rowe submits his current CV herewith for the Court's review. At a minimum, it will demonstrate Plaintiff's reckless misstatements—and bad faith—in attempting to besmirch Dr. Rowe's reputation. *See* Curriculum Vitae of Normal Maurice Rowe, M.D., M.H.A., F.A.C.S. (Apr. 2018), https://www.eastcoastps.com/wp-content/uploads/2018/04/Rowe-cv.pdf.

7 Defendants maintain that this is a frivolous pleading and reserve all rights under at least 28 U.S.C. § 1927.

8 *See* Sample Notice and Consent Form at 2, NSA, www.cms.gov/files/document/nsa-sample-notice-and-consent.pdf (last visited June 25, 2026).

decisions to select Defendants' offers over Emblem's do not transform those offers into fraud; to the contrary, they confirm that independent arbiters charged with evaluating the parties' submissions found Defendants' positions more persuasive. Emblem's dissatisfaction with those outcomes is not a basis for judicial relief, much less an allegation of fraud.

Rather than raise these arguments before the IDREs, Emblem now attempts to relitigate issues that were, or could have been, resolved in the IDR proceedings. Indeed, Emblem alleges that it disclosed prior SCAs in at least two proceedings, yet the IDREs nevertheless selected Rowe's offers. Compl. ¶¶ 339-43, 366-68. These allegations confirm that Emblem's grievance is not with fraud, but with the outcomes of the IDR process itself. The NSA does not permit a disappointed party to recast substantive disagreements as misconduct, and none of the conduct alleged comes close to justifying vacatur of a single award, much less 21. *See Guardian Flight, L.L.C. v. Med. Evaluators of Texas ASO, L.L.C.*, 140 F.4th 613, 621 (5th Cir. 2025).

**D. <u>The Claims Are Barred by *Noerr-Pennington*.</u>**

Plaintiff offers no meaningful response to Defendants' showing that the *Noerr-Pennington* doctrine bars its claims. The conduct challenged in the Complaint constitutes protected petitioning activity undertaken pursuant to rights conferred by the NSA. *See* 42 U.S.C. § 300gg-111; 45 C.F.R. § 149.510. The doctrine provides broad immunity for petitioning activity before courts and administrative bodies alike. *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 178 (3d Cir. 2015); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d Cir. 1999). Because IDR proceedings are congressionally mandated, quasi-adjudicatory proceedings before government-certified decisionmakers, and the Complaint alleges no misconduct independent of Defendants' participation in that process, *Noerr-Pennington* immunity independently requires dismissal.

Nor does the Complaint plead the type of material misrepresentation necessary to defeat that immunity. *See* Opp. at 29 (citing *Cheminor Drugs*, 168 F.3d at 123-24). Although Plaintiff disagrees with the IDREs' assessment of patient acuity, physician qualifications, and Defendants' market share, the Complaint itself alleges that the IDREs considered those factors in selecting Defendants' offers. Compl. ¶¶ 214, 369, 371. Such allegations challenge the IDREs' evaluation of the evidence, not the existence of any material misrepresentation. Dissatisfaction with the merits of an award determination does not defeat *Noerr-Pennington* immunity.

**E. <u>Each Cause of Action Fails to State a Claim.</u>**

Counts I and II fail for the reasons set forth in Defendants' opening brief, which Plaintiff does not meaningfully address. Plaintiff alleges fraud based solely on inferences drawn from IDR decision summaries despite admitting it never saw Defendants' underlying submissions. *See, e.g.*, Compl. ¶¶ 69, 181, 214. Nor does the Rule 9(b) standard for facts within an opposing party's knowledge (which would not apply given the Plaintiff's recitation of such facts here) excuse the Complaint's lack of supporting facts or its impermissible group pleading. *See Weske v. Samsung Elecs. Am. Inc.*, 934 F. Supp. 2d 698, 703 (D.N.J. 2013). At bottom, Plaintiff infers fraud from unfavorable award determinations—a speculative and conclusory theory insufficient under Rule 9(b), *Twombly*, and *Iqbal* that also violates Article III's traceability requirement for standing.

Counts III through VI likewise fail. Count III does not satisfy the IFPA. This is not a case involving allegations of claims for medically unnecessary services, falsified billing codes, or misrepresented provider names and tax identification numbers. *See, e.g.*, *Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Horizon BCBS of N.J.*, 2022 WL 4354654, at *7 (D.N.J. Sept. 20, 2022). Mere disagreement with a provider's billed charges, or the fact that the provider previously accepted a lower negotiated rate, does not render those charges fraudulent or

misleading. *Aetna Health Inc. v. Srinivasan*, 2016 WL 3525298, at *7-8 (App. Div. June 29, 2016). Count IV is barred because the NSA provides the exclusive framework for resolving payment disputes and because the claim is duplicative of Plaintiff's other causes of action. Counts V and VI likewise fail because, as discussed with respect to Count III and Section D *supra*, the Complaint does not adequately plead either fraud or a material misrepresentation. The Complaint also remains defective due to its pervasive use of impermissible group pleading and for the reasons set forth in Section F, *infra*.

**F. <u>The Claims against Dr. Rowe Individually Fail.</u>**

In its Opposition, Plaintiff claims that "[i]t was Dr. Rowe who orchestrated and directed the fraud; it was Dr. Rowe who decided to have the surgeries performed at an in-network hospital instead of an ASC; it was Dr. Rowe who decided which practice entity would submit claims and initiate IDRs." Opp. at 38-39. But none of this is pled in the Complaint—and certainly not averred with specificity as required by Rule 9(b). This alone sinks Plaintiff's individual claims.

**G. <u>A Stay of Discovery is Warranted.</u>**

Discovery cannot proceed in a case where there is no valid cause of action, no basis for judicial review, and no subject matter jurisdiction. Plaintiff's caselaw dealing exclusively with Rule 12(b)(6) motions does not change this fact. Defendants will be beyond prejudiced if forced to partake in discovery, only to have the case dismissed months later on jurisdictional grounds. The risks far outweigh any benefit and a discovery stay is appropriate. It should be noted that other courts hearing similar challenges have stayed discovery pending adjudication of motions to dismiss. *See, e.g.*, *Aetna Health Inc. v. Radiology Partners, Inc.*, No. 3:24-cv-01343, Dkt. No. 102 (M.D. Fla. Apr. 20, 2026) (granting motion to stay); *Anthem Health Plans of Va., Inc. v. AGS Health, Inc.*, No. 7:25-cv-00804, Dkt. No. 84 (W.D. Va. May 29, 2026) (staying deadline to file

joint discovery plan and Rule 26(f) report pending resolution of motion to dismiss).

## II. CONCLUSION

Defendants' Motion should be granted. Anything short of a dismissal with prejudice will open the floodgates for dissatisfied parties to challenge all final IDR decisions by feigning fraud. That is not the law, and it certainly was not Congress' intent in enacting the NSA.

Respectfully submitted,

**MANDELBAUM BARRETT PC**

*/s/ Steven I. Adler*
Steven I. Adler, Esq.
*Attorneys for Defendants*

Date: June 29, 2026

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that copies of Defendants' Reply Brief in support of the Motion to Dismiss and for a Stay of Discovery were served on all counsel of record via CM/ECF on this 29th day of June 2026.

**MANDELBAUM BARRETT PC**

*/s/ Steven I. Adler*

Steven I. Adler, Esq.
*Attorneys for Defendants*